IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **BOBBY GIRIFALCO** and **KAREN CLOSKEY,** individually and on behalf of all others similarly situated,<br><br>*Plaintiffs,*<br><br>*v.*<br><br>**J&A GOODS, LLC D/B/A ECOVIEW WINDOWS AND DOORS**<br><br>**AND**<br><br>**33 MILE RADIUS, LLC**<br><br>**AND**<br><br>**SOLEO COMMUNICATIONS, INC.**<br><br>*Defendants.* | Case No. 2:26-cv-1156<br><br>**CLASS ACTION**<br><br>**JURY TRIAL DEMANDED** |

FIRST[PROPOSED SECOND] AMENDED CLASS ACTION COMPLAINT
AND DEMAND FOR JURY TRIAL

Plaintiffs Bobby Girifalco and Karen Closkey ("Plaintiffs") bring this Class Action Complaint and Demand for Jury Trial against Defendants EcoView Windows and Doors ("EcoView") and"), 33 Mile Radius LLC ("33 Mile"), and Soleo Communications, Inc. ("Soleo") (Collectively "Defendants") and allege as follows:

1.    Telemarketing calls are intrusive. A great many people object to these calls, which interfere with their lives, tie up their phone lines, and cause confusion and disruption on phone records. Faced with growing public criticism of abusive telephone marketing practices, Congress enacted the Telephone Consumer Protection Act of 1991. Pub. L. No. 102-243, 105 Stat. 2394 (1991) (codified at 47 U.S.C. § 227). As Congress explained, the law was a response to Americans 'outraged over the proliferation of intrusive, nuisance calls to their homes from

1

telemarketers' *id.* § 2(6), and sought to strike a balance between '[i]ndividuals' privacy rights, public safety interests, and commercial freedoms' *id.* § 2(9).

2.    "The law opted for a consumer-driven process that would allow objecting individuals to prevent unwanted calls to their homes. The result of the telemarketing regulations was the national Do-Not-Call registry. *See* 47 C.F.R. § 64.1200(c)(2). Within the federal government's web of indecipherable acronyms and byzantine programs, the Do-Not-Call registry stands out as a model of clarity. It means what it says. If a person wishes to no longer receive telephone solicitations, she can add her number to the list. The TCPA then restricts the telephone solicitations that can be made to that number. *See id.*; 16 C.F.R. § 310.4(b)(iii)(B) ('It is an abusive telemarketing act or practice and a violation of this Rule for a telemarketer to . . . initiat[e] any outbound telephone call to a person when . . . [t]hat person's telephone number is on the "do-not-call" registry, maintained by the Commission.')…Private suits can seek either monetary or injunctive relief. *Id*…This private cause of action is a straightforward provision designed to achieve a straightforward result. Congress enacted the law to protect against invasions of privacy that were harming people.  The law empowers each person to protect her own personal rights. Violations of the law are clear, as is the remedy. Put simply, the TCPA affords relief to those persons who, despite efforts to avoid it, have suffered an intrusion upon their domestic peace." *Krakauer v. Dish Network, L.L.C.*, 925 F.3d 643, 649-50 (4th Cir. 2019).

3.    The Plaintiffs bring this action to enforce the consumer-privacy provisions of the TCPA alleging that Defendants violated the TCPA by making telemarketing calls to Plaintiffs and other putative class members listed on the National Do Not Call Registry without their written consent as well as calling people who had previously asked to no longer receive calls.

**PARTIES**

2

4.      Plaintiff Bobby Girifalco is an individual residing in the Eastern District of Pennsylvania.

5.      Plaintiff Karen Closkey is an individual residing in the Eastern District of Pennsylvania.

6.      Defendant J&A Goods, LLC is a Pennsylvania limited liability company.

7.      Defendant 33 Mile Radius, LLC is an Ohio limited liability company who is in the business of making calls and selling leads to home improvement companies like EcoView.

8.      Defendant Soleo Communications, Inc. is a Delaware corporation with its principal place of business in New York that is in the business of placing telemarketing calls, including calls using an artificial or prerecorded voice. Soleo then sells and transfers the resulting calls and leads to lead buyers and lead aggregators like 33 Mile.

**JURISDICTION AND VENUE**

8.9.    This Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331 and 47 U.S.C. § 227 *et seq*.

9.10.   This Court has specific personal jurisdiction over Defendants because they have purposefully availed themselves in conducting business in Pennsylvania and calling an individual with a 215- area code number.

10.11.  Venue is proper pursuant to 28 U.S.C. § 1391(b)(2) because a substantial portion of the acts giving rise to the complaint, namely, the illegal telemarketing conduct, took place in this District because the calls and text message calls were sent into this District to a 215- area code number.

3

# BACKGROUND

11.12.   The TCPA prohibits making multiple telemarketing calls to a residential telephone number that has previously been registered on the National Do Not Call Registry. *See* 47 U.S.C. § 227(c)(5).

12.13.   The National Do Not Call Registry allows consumers to register their telephone numbers and thereby indicate their desire not to receive telephone solicitations at those numbers. *See* 47 C.F.R. § 64.1200(c)(2).

13.14.   A listing on the National Do Not Call Registry "must be honored indefinitely, or until the registration is cancelled by the consumer or the telephone number is removed by the database administrator." *Id.*

14.15.   The TCPA and implementing regulations prohibit the initiation of telephone solicitations to residential telephone subscribers on the Registry and provide a private right of action against any entity that makes those calls, or "on whose behalf" such calls are promoted. 47 U.S.C. § 227(c)(5); 47 C.F.R. § 64.1200(c)(2).

The TCPA Also Requires Telemarketers to Transmit Caller Identification Information Including the Telemarketer's Name.

15.16.   The TCPA requires any "person or entity that engages in telemarketing" to "transmit caller identification information." 47 C.F.R. § 64.1601(e).

16.17.   The relevant regulation defines "caller identification information" as "either CPN or ANI, and, when available by the telemarketer's carrier, the name of the telemarketer." 47 C.F.R. § 64.1601(e)(1).

17.18.   A violation of this subsection of the TCPA is enforceable under the private right of action provided for under 47 U.S.C. § 227(c)(5)'s private right of action. *Dobronski v. Selectquote Ins. Servs.*, No. 2:23-CV-12597, 2025 WL 900439, at *3 (E.D. Mich. Mar. 25, 2025); *Newell v. JR Cap., LLC*, 791 F. Supp. 3d 571, 575 (E.D. Pa. 2025).

4

**FACTUAL ALLEGATIONS**

18.19.  Plaintiff Bobby Girifalco is, and at all times mentioned herein was, a "person" as defined by 47 U.S.C. § 153(39).

19.20.  Plaintiff Karen Closkey is, and at all times mentioned herein was, a "person" as defined by 47 U.S.C. § 153(39).

20.21.  At no point did Plaintiffs consent to receiving telemarketing calls or text messagesmessage calls  from Defendants prior to receiving the communications at issue.

21.22.  Plaintiff Girifalco's telephone number, (215) XXX-XXXX, is a residential, non-commercial telephone number.

22.23.  Plaintiffs use the telephone number for personal, residential, and household reasons only.

23.24.  The number is a residential telephone line because it is assigned to a residential telephone exchange service for consumers and is not assigned to a telephone exchange service for businesses.

24.25.  Moreover, the telephone line is assigned to a cellular service which is presumptively residential and was eligible for registration on the National Do Not Call Registry at the time it was registered.

25.26.  That number is and has been on the Do Not Call Registry since August 09, 2013.

26.27.  Plaintiffs have never been customers of Defendants and never requested information regarding Defendants' products or services.

27.28.  Despite that fact, Plaintiffs received multiple telemarketing calls and text messagesmessage calls to Plaintiff Girifalco's telephone number.

28.29.  On September 2, 2025, at approximately 5:46 PM, Plaintiff Girifalco received a call from telephone number 215-666-5965, which Plaintiff Closkey answered.

29.30.  The call was initiated using a prerecorded or artificial voice that promoted home improvement services and asked whether the person that answered was the homeowner.

30.31. Upon information and belief, this call was placed using AI technology and consisted of a robot asking the questions, such as if they were a homeowner.

31.32. Plaintiff Closkey asked whether the caller was a person, but the AI ignored the question for almost 15 seconds, including her "Hello?," and simply gave up trying to hold a conversation and transferred the call to an obviously human live agent.

32.33. The voice was prerecorded because the sound and tone of the voice was very unnatural, sounded like a robot, had unnatural pauses and cadence, and transferred the call to someone who was a human as soon as its humanity was questioned.

33.34. Plaintiff Closkey was transferred to a live agent identifying himself as "Denny" from an entity calling itself the illegally and fictitiously named "Home Improvement Group," and asked if she was interested in getting a quote for home improvements, like window replacement.

34.35. "Denny" stated that Plaintiffs would receive a follow-up call from a home improvement expert to provide an estimate for replacement windows.

35.36. During the call, Plaintiff Closkey provided the name "Laura Nelson" solely to track the call and identify the calling parties.

37. Plaintiff received a materially identical call on September 3, 2025, but the call disconnected shortly after a human came on the line.

36.38. On September 3, 2025, at approximately 10:36 AM, Plaintiff Girifalco received a yet another call from telephone number 215-996-7120, which, again, Plaintiff Closkey answered.

37.39. The caller stated that the prior call (the one on September 3 referenced above) had been disconnected and asked for "Laura," repeating the same unique false name previously provided by Plaintiff Closkey.

38.40. The caller stated that a contractor was on the line and transferred Plaintiff Closkey to an individual identifying herself as "Irene" from Defendant EcoView Windows & Doors, who scheduled a window estimate appointment.

6

39.41.  Later that same day, on September 3, 2025, at approximately 2:10 PM, Plaintiff Girifalco received a call from telephone number 610-572-2036 from an individual identifying herself as "Kelly" from EcoView Windows & Doors, calling to follow up on the call earlier requesting the appointment time.

40.42.  The appointment was rescheduled, and the representative changed the September 4th 6 PM appointment to September 8th at 10 AM.

41.43.  On September 8, a EcoView Windows & Doors representative, Pat Pryal, arrived at the address provided, and left the following business card:



42.44.  In addition to the calls, Plaintiff Girifalco received multiple text messagesmessage calls confirming, scheduling, and reminding Plaintiff of the EcoView Windows & Doors appointment, including messages identifying specific dates and times for the estimate.

43. 45.  Some of the text ~~messages~~message calls are below:



44. 46.  Plaintiff Closkey set the aforementioned appointment to affirmatively identify the identity of the company who was illegally calling Plaintiffs and for no other reason.

45. 47.  The calls all came from the following spoofed numbers. Counsel for the Plaintiffs has access to "dip" the Caller ID database of the calling carrier to ascertain the CNAM information to ascertain (1) whether caller name delivery (CNAM) is available with the Defendants' calling carrier, and (2) whether such CNAM information contained the name of the telemarketer. The results of those dips are as follows:

| Number | CNAM Available? | CNAM Result | Carrier (Spoofed) |
|---|---|---|---|
| 2156665965 | Y | ROBERT LOWE | YMAX (S) |
| 2159967120 | Y | LN LEXINGTON PA | Level 3 |
| 6105722036 | Y | HAVERTOWN PA | Twilio |
| 4849228801 | Y | PHOENIXVILLE PA | Twilio |

46.48. As the aforementioned chart shows, the CNAM transmitted by the ultimate telephone carriers provided CNAM functionality, but provided inaccurate CNAM functionality, since Defendants utilized "spoofing," or otherwise default settings, to make the calls appear to come from out of service names and numbers, instead of the Defendants' names and numbers.

47.49. Indeed, the Defendants appear to have spoofed several of the numbers, as will be revealed through discovery, to further hide their identity.

48.50. With respect to each of the numbers listed above, none of the numbers permit a caller to call the number and lodge a do not call request during regular business hours, because they are spoofed to unassigned phone numbers or do not connect at all. It is not possible to call any of those numbers back to lodge a Do Not Call request during regular business hours with the Defendants.

49.51. During the interaction with Mr. Pryal, he was asked as to why Plaintiffs were receiving highly illegal prerecorded calls from a fictitious entity, "Home Improvement Group." Mr. Pryal was able to look into the information in the lead and appointment and confirmed that Defendant 33 Mile Radius was the lead generator who called the Plaintiffs initially and that EcoView hired 33 Mile Radius to generate leads for it by making calls.

50.52. Indeed, counsel for EcoView, which is considering bankruptcy, has indicated to counsel for Plaintiffs that it intends to list Defendant 33 Mile on its bankruptcy schedules.

Soleo Placed the Prerecorded Calls at Issue and Transferred Them to 33 Mile, Which Transferred Them to EcoView.

53. Following the interaction with Mr. Pryal, and in the course of this litigation, Defendant 33 Mile has represented to Plaintiffs' counsel that it did not itself dial Plaintiff Girifalco's telephone number on September 2, 2025.

54. 33 Mile has instead admitted that the September 2, 2025 call was transferred to 33 Mile by Defendant Soleo Communications, Inc.

55.     33 Mile has characterized that transfer as an "inbound" call purportedly placed by Plaintiffs to Soleo.

56.     That characterization is false. Plaintiffs never placed the initial September 2 or September 3 telephone calls to Soleo, to 33 Mile, to EcoView, or to any person or entity acting on any Defendant's behalf, and never requested that any Defendant contact them.

57.     To the contrary, and as alleged above, on September 2, 2025 at approximately 5:46 PM Plaintiffs received an unsolicited call at Plaintiff Girifalco's telephone number from the spoofed caller ID 215-666-5965, which Plaintiff Closkey answered, and which opened with an artificial or prerecorded voice that promoted home improvement services and asked whether the person who answered was the homeowner.

58.     Plaintiff Girifalco's telephone records confirm that the call was received to, and not placed from, Plaintiff Girifalco's telephone number.

59.     A consumer who places a call to a telemarketer is not greeted by an artificial or prerecorded voice asking the consumer whether he or she is a homeowner. The prerecorded opening of the September 2, 2025 call, and the fifteen seconds during which the artificial voice ignored Plaintiff Closkey's questions before giving up and transferring her to a live agent, confirm that the call was an outbound telemarketing call placed to Plaintiffs, and not an inbound call placed by them.

60.     The entity that transferred the September 2, 2025 call to 33 Mile is thus necessarily the entity that placed that call. Because 33 Mile admits that Soleo transferred the call to it, Soleo placed, or caused to be placed, the artificial or prerecorded voice call to Plaintiffs.

61.     Plaintiffs served a subpoena upon Soleo pursuant to Federal Rule of Civil Procedure 45 seeking documents and information concerning the calls at issue, including records identifying the origination, dialing, routing, recording, and transfer of those calls, the caller identification information transmitted with them, the identity of the party that placed them, and any consent purportedly obtained for them.

10

62.     To date, Soleo has not responded to that subpoena, has not produced a single document, and has not served any objection.

63.     Soleo has therefore withheld from Plaintiffs the very records, including the dialer records, call detail records, caller ID assignments, and transfer logs, that are uniquely within Soleo's possession and that would establish the scope and mechanics of its calling campaign. Plaintiffs accordingly plead the following allegations upon information and belief based on the facts presently available to them, and anticipate that evidence of these matters will be obtained through discovery.

64.     Upon information and belief, Soleo initiated the September 2, 2025 call, and the subsequent calls to Plaintiff Girifalco's telephone number identified above, except for the second call on September 3, 2025 using an artificial or prerecorded voice.

65.     Upon information and belief, Soleo initiated those calls using "spoofed" caller identification information, including the caller IDs identified in the chart above, which did not identify Soleo as the telemarketer and which could not be called back to lodge a do not call request during regular business hours.

66.     Upon information and belief, Soleo placed these calls *en masse*, using the same or a substantially similar artificial or prerecorded voice message, to consumers throughout the United States, including to consumers whose telephone numbers were registered on the National Do Not Call Registry, for the purpose of identifying homeowners who could then be qualified and sold as leads and live call transfers to lead buyers such as 33 Mile.

67.     Soleo did not have Plaintiffs' prior express consent or prior express written consent to place the calls, had no established business relationship with Plaintiffs, and placed the calls to a number that had been registered on the National Do Not Call Registry since August 9, 2013.

68.     Soleo is therefore directly liable under the TCPA as the entity that initiated the calls at issue.

11

51.69.  The calls and text ~~messages~~message calls were sent for the purpose of encouraging the purchase of home improvement services, including window replacement, and therefore constituted telemarketing.

52.70.  The calls used a prerecorded or artificial voice to initiate contact and induce engagement with live agents.

53.71.  Furthermore, in 2013 the FCC held that a corporation or other entity that contracts out its telephone marketing may be held vicariously liable under federal common law principles of agency for violations of section 227(b) or section 227(c) that are committed by third-party telemarketers. In re DISH Network, LLC, 28 FCC Rcd. 6574 ¶ 1 (2013).

54.72.  For the calls that EcoView Windows & Doors did not itself place, EcoView is liable for the telemarketing calls placed by ~~its~~Soleo and transferred, through EcoView's lead generator~~,~~ 33 Mile, ~~and transferred~~ to EcoView to generate customers for EcoView, including ~~Plaintiffs~~those of the Plaintiffs'.

55.73.  Upon information and belief, EcoView sought to hire a lead generator capable of placing outbound calls to potential customers, vetting those customers, and transferring and selling only purportedly interested consumers to EcoView.

56.74.  EcoView hired and utilized 33 Mile to orchestrate an *en masse* telemarketing campaign designed to identify and qualify potential customers and then transfer those consumers directly to EcoView or EcoView's representatives.

57.75.  EcoView controlled the day-to-day activities of 33 Mile by providing specific criteria for acceptable leads, including geographic location, homeownership status, and eligibility for specific home improvement services, and required its vendors to adhere to those criteria.

58.76.  EcoView authorized 33 Mile to initiate calls to consumers for the purpose of generating leads for EcoView and to transfer and sell those leads directly to EcoView once a consumer was deemed qualified so that EcoView could then call to finalize the sales pitch and set the appointment.

12

59.77.  EcoView compensated 33 Mile only for leads that met EcoView's predefined criteria, thereby exercising control over the substance and effectiveness of the telemarketing calls.

60.78.  EcoView accepted the benefits of the unlawful telemarketing calls by receiving qualified leads, scheduling in-home appointments, confirming those appointments by telephone and text message, and dispatching EcoView representatives to meet with consumers.

61.79.  EcoView ratified 33 Mile's conduct by knowingly accepting and acting upon leads generated through unlawful telemarketing calls, including calls made using prerecorded or artificial voice technology and calls to numbers listed on the National Do Not Call Registry.

62.80.  EcoView had the authority and ability to terminate its relationship with 33 Mile upon learning of unlawful or noncompliant telemarketing conduct.

63.81.  EcoView failed to terminate, suspend, or adequately supervise 33 Mile despite the illegal nature of the telemarketing calls used to generate EcoView's leads.

64.82.  As such, EcoView knowingly ratified, approved, and benefitted from 33 Mile's telemarketing conduct.

65.83.  Under principles of actual authority, apparent authority, and ratification, EcoView Windows & Doors is vicariously liable for the unlawful telemarketing calls and text messagesmessage calls placed by 33 Mile, and by Soleo as 33 Mile's subagent, on EcoView's behalf.

**33 Mile Purchased, Qualified, and Resold the Leads That Soleo Generated Through Illegal Prerecorded Calls.**

84.    33 Mile acted as an intermediary, a lead buyer and lead aggregator, positioned between Soleo, which placed the calls, and EcoView, which purchased the resulting leads and in-home appointments.

85. Upon information and belief, Soleo would place outbound artificial or prerecorded voice calls and would transfer to 33 Mile only those consumers who indicated that they were homeowners potentially interested in home improvement services.

86. 33 Mile would then further screen, qualify, and enrich the lead, including by confirming homeownership, the consumer's geographic location, the nature and scope of the desired project, and the consumer's willingness to sit for an in-home estimate, and, if the consumer satisfied the criteria of one of 33 Mile's contractor clients, would transfer and sell the enriched lead to that contractor, here EcoView.

87. That is precisely what occurred here. The September 2, 2025 call opened with Soleo's artificial or prerecorded voice, was transferred to a live agent identifying himself as "Denny" of the illegally and fictitiously named "Home Improvement Group," who further qualified Plaintiff Closkey and promised a follow-up call from a home improvement expert, and was followed on September 3, 2025 by a call that referenced the unique false name Plaintiff Closkey had supplied on the prior call and transferred her directly to "Irene" of EcoView, who set the in-home appointment.

88. The reappearance of the unique false name "Laura Nelson" on the September 3, 2025 call establishes that the lead generated by Soleo's prerecorded call was passed down the chain from Soleo, to 33 Mile, and from 33 Mile to EcoView.

89. Upon information and belief, 33 Mile benefitted from both sides of this transaction: 33 Mile paid Soleo for each call transfer that 33 Mile accepted, and EcoView paid 33 Mile for each qualified lead and appointment that 33 Mile delivered.

90. Upon information and belief, 33 Mile specified for Soleo the criteria a consumer was required to satisfy before Soleo could transfer a call to 33 Mile, including geographic location, homeownership status, and interest in specific home improvement products and services.

14

91.     By specifying the leads and call criteria that it would accept and pay for, 33 Mile directed Soleo as to the content, method, timing, geographic targeting, and criteria of the calls Soleo placed in order to meet those specifications.

92.     Upon information and belief, 33 Mile compensated Soleo only for call transfers meeting those criteria, thereby exercising control over the substance and effectiveness of Soleo's telemarketing calls.

93.     33 Mile had the right and the practical ability to audit Soleo's calling practices, to require that Soleo scrub its calling lists against the National Do Not Call Registry, to prohibit Soleo's use of artificial or prerecorded voice messages, to require that Soleo transmit accurate caller identification information, and to suspend or terminate its relationship with Soleo upon learning of unlawful or noncompliant telemarketing conduct.

94.     A reasonable lead buyer like 33 Mile, whose business consists of accepting live call transfers generated by mass outbound dialing, would investigate the methods by which those calls are generated.

95.     33 Mile did not. 33 Mile failed to supervise, audit, discipline, or terminate Soleo despite actual or constructive knowledge of the manner in which the transferred calls were being generated, including through artificial or prerecorded voice calls placed to numbers registered on the National Do Not Call Registry, and including with respect to the calls at issue here.

96.     33 Mile accepted the benefits of Soleo's unlawful calls by taking the transfers, qualifying the consumers delivered on them, and reselling those consumers as enriched leads and live transfers to its contractor clients, including EcoView.

97.     33 Mile thereby knowingly ratified, approved, adopted, and benefitted from Soleo's telemarketing conduct.

98.     At no point were Plaintiffs given any indication that they were dealing with multiple, independent entities. From Plaintiffs' perspective, the September 2 and September 3, 2025 calls were a single, seamless, smooth and continuous telemarketing transaction and transfer, moving without interruption from an artificial or prerecorded voice, to a live agent using

15

the fictitious name "Home Improvement Group," to EcoView's own representatives, all for the purpose of selling EcoView's replacement windows.

99.    The FCC has long instructed that sellers and the intermediaries they use may not insulate themselves from liability by outsourcing their telemarketing to third parties, because "[a]llowing the seller to avoid potential liability by outsourcing its telemarketing activities to unsupervised third parties would leave consumers in many cases without an effective remedy for telemarketing intrusions." *In re DISH Network, LLC*, 28 FCC Rcd. 6574, 6588 ¶ 37 (2013).

100.    Under principles of actual authority, apparent authority, and ratification, 33 Mile is vicariously liable for the unlawful telemarketing calls that Soleo placed, transferred, and sold to 33 Mile, including the calls to Plaintiffs.

101.    EcoView is likewise vicariously liable for those same calls, which Soleo placed as the subagent of 33 Mile, EcoView's own lead generator, in furtherance of the very lead generation campaign that EcoView purchased, directed, funded, and accepted the benefits of.

102.    In sum, Soleo is directly liable under the TCPA as the actual initiator of the calls at issue, except for those calls directly placed by EcoView, of which EcoView was the direct actual initiator. 33 Mile is vicariously liable as the intermediary that engaged Soleo to generate lead calls, dictated the criteria for those calls, accepted and further qualified the resulting transfers, and resold them for profit. And EcoView is vicariously liable for hiring 33 Mile to procure call transfers on its behalf, for the campaign that EcoView sponsored and directed, and for accepting and monetizing those call transfers with full awareness of how they were generated.

66.103.    The calls and text messagesmessage calls were unwanted and nonconsensual encounters.

67.104.    Plaintiffs never provided prior express consent, written or otherwise, to receive prerecorded calls, telemarketing calls, or text messagesmessage calls, from either Defendant.

16

68.105.      Plaintiffs' privacy has been repeatedly violated by the above-described telemarketing calls and text messagesmessage calls.

69.106.      Plaintiffs were harmed by Defendants' conduct because the calls and texts were annoying, harassing, and a nuisance, and they occupied Plaintiffs' telephone line, storage space, and bandwidth, rendering his phone unavailable for legitimate communications, including while spending time with significant others, and performing other tasks.

## CLASS ACTION ALLEGATIONS

70.107.      Plaintiffs incorporate by reference all other paragraphs of this Complaint as if fully stated herein.

71.108.      Plaintiffs bring this action on behalf of themselves and the following classes (the "Class") pursuant to Federal Rule of Civil Procedure 23.

**National DNC Class:** All persons in the United States whose (1) telephone numbers were on the National Do Not Call Registry for at least 31 days, (2) but who received more than one telemarketing call or text message from or on behalf of Defendants encouraging the purchase of Defendants' goods or services, (3) within a 12-month period (4) at any time in the period that begins four years before the date of filing this Complaint to trial.

**Telemarketing Caller ID Class:** All persons within the United States to whom: (1) Defendants (or a third-party acting on behalf of Defendants) sent (2) two or more telemarketing calls in a 12-month period, (3) which either (a) did not transmit caller identification information that included either CPN or ANI and the Defendants' or telemarketer's name, (b) did not transmit a valid CPN or ANI at all, or (c) transmitted a CPN or ANI that would not have allowed an individual to make a do not call request to Defendants during regular business hours, (4) within the four years prior to the filing of the Complaint.

**Robocall Class:** All persons in the United States who, (1) within four years prior to the commencement of this litigation until the class is certified (2) received one or more calls on their cellular telephone or any other protected telephone service (3) from or on behalf of the Defendants (4) sent using the same, or substantially similar, pre-recorded message used to contact the Plaintiffs.

17

72.109.        **Numerosity**: The exact number of Class members is unknown but based on the *en masse* nature of telemarketing is believed to be at least hundreds of persons at this time, and individual joinder in this case is impracticable. Class members can be easily identified through Defendants' records, or those of their agents.

73.110.        **Typicality**: Plaintiffs' claims are typical of the claims of other Class members in that Plaintiffs, and Class members, sustained damages arising out of Defendants' telemarketing calls and Class members sustained similar injuries and damages as a result of Defendants' uniform illegal conduct.

74.111.        **Adequacy**: Plaintiffs will fairly and adequately represent and protect the interests of the Classes and have retained counsel competent and experienced in complex class actions to vigorously prosecute this action on behalf of the Classes. Plaintiffs have no interests that conflict with, or are antagonistic to those of, the Classes, and Defendants have no defenses unique to Plaintiffs.

75.112.        **Commonality and Predominance**: There are many questions of law and fact common to the claims of Plaintiffs and members of the Classes, and those questions predominate over any questions that may affect individual members of the Classes. Common questions for the Classes include, but are not necessarily limited to, the following:

a.        Whether Defendants obtained "prior express invitation or permission" under the TCPA, before the calls at issue;

b.        Whether Defendants have established and implemented, with due care, reasonable practices and procedures to effectively prevent telephone solicitations in violation of the TCPA's do-not-call regulations;

18

c.    Whether Defendants sent calls using artificial or prerecorded voices;

d.    Whether Defendants should be held liable for violations committed on their behalf;

e.    Whether Defendants sent calls using inaccurate caller ID information as prohibited by law;

f.    Damages, including whether any violations were performed willfully or knowingly, such that Plaintiffs and the other Class members are entitled to treble damages under 47 U.S.C. § 227(c)(5); and

g.    whether ~~Defendant~~Defendants EcoView ~~Window~~Windows and Doors ~~is~~and 33 Mile Radius are vicariously liable for calls placed by telemarketing vendors, including ~~33 Mile~~Soleo; and

~~g.~~h.    whether Soleo Communications, Inc. initiated the calls at issue, and whether it did so using an artificial or prerecorded voice and to numbers registered on the National Do Not Call Registry.

~~76.~~113.    **Superiority**: Class action treatment is superior to the alternatives for the fair and efficient adjudication of the controversy alleged herein.  Such treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the duplication of effort and expense that numerous individual actions would entail.  There are hundreds of Class members in each class, such that joinder of all members is impracticable.

77.114.      In addition to satisfying the prerequisites of FED. R. CIV. P. 23(a), Plaintiffs satisfy the requirements for maintaining a class action under FED. R. CIV. P. 23(b) because:

a.      The prosecution of separate actions by the individual Class members would create a risk of inconsistent or varying adjudication which would establish incompatible standards of conduct for Defendants;

b.      The prosecution of separate actions by individual Class members would create a risk of adjudications with respect to them which would, as a practical matter, be dispositive of the interests of other Class members not parties to the adjudications, or substantially impair or impede their ability to protect their interests;

c.      Defendants have acted or refused to act on grounds that apply generally to the proposed Classes, thereby making final injunctive relief or declaratory relief herein appropriate with respect to the proposed Classes as a whole; and

d.      Questions of law or fact common to the members of the Classes predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

## COUNT I
### Violations of the TCPA, 47 U.S.C. § 227
### (On Behalf of Plaintiffs and the National DNC Class)

78.115.      Plaintiffs reallege and incorporate by reference each and every allegation set forth in the preceding paragraphs.

79.116.      It is a violation of the TCPA to initiate any telephone solicitation to a residential telephone subscriber who has registered his or her telephone number on the National Do Not Call Registry. 47 C.F.R. 64.1200(c)(2).

80.117.    Defendants and/or their affiliates, agents, and/or other persons or entities acting on Defendants' behalf violated the TCPA by causing multiple telephone solicitation calls to be initiated to Plaintiffs and members of the National DNC Class in a 12-month period, despite the person's registration of his or her telephone numbers on the National Do Not Call Registry.

81.118.    These violations were willful or knowing.

82.119.    As a result of Defendants and/or their affiliates, agents, and/or other persons or entities acting on Defendants' behalf's violations of the TCPA's national do-not-call rule, Plaintiffs and members of the National DNC Class are each entitled to an injunction and up to $500 in damages for each such violation. 47 U.S.C. § 227(c)(5).

83.120.    Because such violations were willful or knowing, the Court should treble the amount of statutory damages, pursuant to 47 U.S.C. § 227(c)(5).

**SECOND CAUSE OF ACTION**
**Violation of the Telephone Consumer Protection Act**
**47 U.S.C. § 227(c)(5) & 47 C.F.R. § 64.1601(e)**
**(On behalf of Plaintiffs and the Telemarketing Caller ID Class)**

84.121.    Plaintiffs reallege and incorporate  by reference each and every allegation set forth in the preceding paragraphs.

85.122.    It is a violation of the TCPA to make a telemarketing call without the transmission of caller identification information including either a CPN or ANI and, when available by the telemarketer's carrier, the name of the telemarketer. 47 C.F.R. § 64.1601(e)(1).

86.123.    It is a violation of the TCPA to transmit a CPN or ANI that does not allow any individual to make a do-not-call request during regular business hours. 47 C.F.R. § 64.1601(e)(1).

87.124.    Defendants and/or their affiliates, agents, and/or other persons or entities acting on Defendants' behalf violated the TCPA by causing multiple telemarketing calls to be initiated to Plaintiffs and members of the Telemarketing Caller ID Class in a 12-month period, without proving a CPN or ANI that allowed any individual to make a do-not-call request during regular business hours, as well as by using "spoofed" caller IDs that did not allow consumers to lodge a do-not-call request during regular business hours.

88.125.    These violations were willful or knowing.

89.126.    As a result of Defendants and/or their affiliates, agents, and/or other persons or entities acting on Defendants' behalf's violations of the TCPA's telemarketing Caller ID transmission requirement, Plaintiffs and members of the Telemarketing Caller ID are each entitled to an injunction and up to $500 in damages for each such violation. 47 U.S.C. § 227(c)(5).

90.127.    Because such violations were willful or knowing, the Court should treble the amount of statutory damages, pursuant to 47 U.S.C. § 227(c)(5).

## THIRD CAUSE OF ACTION

**Statutory Violations of the Telephone Consumer Protection Act**
**(47 U.S.C. § 227(b)(1)(A)(iii) and/or (b)(1)(B)) on behalf of the Robocall Class**

91.128.    Plaintiffs incorporate by reference the foregoing allegations as if fully set forth herein.

92.129.    The Defendants violated the TCPA by sending or causing to be sent calls to the residential telephones and other protected telephones of Plaintiffs and members of the Robocall Class using a pre-recorded messages without their prior express written consent.

93.130.          As a result of Defendants' violations of 47 U.S.C. § 227 *et seq.*, Plaintiffs and Robocall Class members are entitled to an award of $500 in statutory damages for each and every violation of the statute, pursuant to 47 U.S.C. § 227(b)(3)(B).

94.131.          The Plaintiffs and Robocall Class members are entitled to an award of treble damages if the Defendants' actions are found to have been knowing or willful.

95.132.          Plaintiffs and Robocall Class members are also entitled to and do seek injunctive relief prohibiting Defendants from using a pre-recorded voice in the future, except for emergency purposes.

**<u>PRAYER FOR RELIEF</u>**

WHEREFORE, Plaintiffs, individually and on behalf of the Class, respectfully request that the Court enter judgment against Defendants for:

A.          Certification of the Classes as alleged herein;

B.          Appointment of Plaintiffs as representatives of the Classes;

C.          Appointment of the undersigned as counsel for the Classes;

D.          Damages to Plaintiffs and members of the Classes pursuant to 47 U.S.C. § 227(c)(5) and/or (b)(3);

E.          Injunctive relief for Plaintiffs and members of the Classes, pursuant to 47 U.S.C. § 227(c)(5), and/or (b)(3), preventing the Defendants from making calls to numbers listed on the National Do Not Call Registry, without transmission of lawful caller ID information, or using an artificial or prerecorded voice;

F.          Injunctive relief prohibiting Defendants from using artificial or prerecorded voices to contact residential telephone lines and other protected lines, except for emergency purposes, in the future;

G.     Attorneys' fees and costs, as permitted by law; and

H.     Such other or further relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiffs hereby demand a trial by jury.

RESPECTFULLY SUBMITTED AND DATED this 24th day of July, 2026.

/s/ Andrew Roman Perrong
Andrew Roman Perrong, Esq.
PA Bar #333687
Perrong Law LLC
2657 Mount Carmel Avenue
Glenside, Pennsylvania 19038
1669 Edgewood Road, Suite 218
Yardley, PA 19067
Phone: 215-225-5529 (CALL-LAW)
Facsimile: 888-329-0305
a@perronglaw.com

24